**[ECF No. 139]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **DANDREA PRODUCE, LLC,**<br>**Plaintiff,**<br>**v.**<br>**SAFEWAY FRESH FOODS LLC et al.,**<br>**Defendants.** | **Civil No. 25-9859 (RMB/SAK)** |

**OPINION AND ORDER**

Presently before the Court is the application of Defendant Farm Credit East, ACA ("FCE") for an Order compelling discovery relating to its waiver and estoppel defenses, ECF No. 139. The Court received the response filed by Plaintiff Dandrea Produce, LLC ("Plaintiff" or "Dandrea"), ECF No. 140. The Court exercises its discretion to decide the application without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons set forth herein, Defendant's application is **GRANTED**.

## I. BACKGROUND

Plaintiff filed this action on June 11, 2025, asserting various claims under state and federal law against Defendants Safeway Fresh Foods LLC d/b/a Sunnyside Farms ("Safeway"), Salvatore F. Tedesco Jr., Frank S. Tedesco, Kerry E. Tedesco, Vivianna Tedesco, Safeway Distributors, LLC, Safest-Way Labor Force, LLC, Safeway Storage Real Estate LLC, SFT Investments LLC, Fasst Farms, LLC, and FCE. *See* Compl., ECF No. 1. Intervenor Plaintiff Economy Produce and Vegetable Company, Inc. subsequently filed a First Amended Complaint in Intervention against the same parties, excluding Fasst Farms, and including three new Defendants: Frank J. DiMauro,

DiMauro Enterprises LLC, and F&S Produce Co., Inc. *See* ECF No. 59. Plaintiff followed with its own amended complaint, adding a few new parties and a slew of new claims. *See* Am. Compl., ECF No. 72. The core relief sought by Plaintiff is to enforce its rights pursuant to the Perishable Agricultural Commodities Act ("PACA") of 1930, 7 U.S.C. §§ 499a–499s. *See id.* ¶ 1. In brief, Plaintiff alleges that from July 6, 2023 through approximately June 7, 2025, it sold and delivered perishable agricultural commodities to Safeway, and Safeway accepted these goods. *See id.* ¶ 22. Safeway then sold these goods but failed to make full payment promptly for the goods to Plaintiff despite its repeated demands. *See id.* ¶¶ 26, 27. Plaintiff contends Safeway's outstanding payments and sale proceeds of the goods qualify as "PACA Trust Assets." *Id.* ¶¶ 25, 26. As a result, Plaintiff seeks, *inter alia*, injunctive and monetary relief to compel the turnover and disgorgement of PACA trust assets and compensatory damages relating thereto. *See id.* ¶¶ 30–38.

Plaintiff's claims against FCE arise out of its alleged conversion and/or unlawful retention of certain PACA trust assets it received from Safeway. *See id.* ¶¶ 63–67. Plaintiff seeks monetary damages for the amount of the subject PACA trust assets FCE received while it knew or had reason to know that Safeway was in violation of its PACA trust obligations. *See id.* FCE's responses to Plaintiff's and Intervenor Plaintiff's amended complaints assert a number of affirmative defenses. *See* ECF Nos. 75, 87. Among these are that Plaintiff failed to perfect its PACA rights or knowingly and/or voluntarily waived them, and that any asserted claims are barred by the equitable doctrines of waiver and/or estoppel. *See, e.g.*, ECF No. 87, at 25, 27.

FCE now seeks discovery into its waiver and estoppel defenses.[1] It asserts that, while the record is not yet fully developed, discovery taken thus far "provides a substantial basis to conclude

[1] The underlying issue in FCE's application was first raised in a letter to the Court advising of alleged interference with two third-party subpoenas served upon Plaintiff's bank and accountant. *See* ECF No. 121. Thereafter, Court held an on-the-record discovery hearing, at which it reserved

that Dandrea and Safeway were operating under a longstanding credit relationship inconsistent with PACA's prompt-payment framework." Appl. at 2. FCE argues that this "course of dealing" reflects an implicit, pre-default agreement to payment terms exceeding those permitted by PACA, thereby waiving Plaintiff's trust protections. *Id.* at 1. It also argues "at a minimum, this warrants further discovery." *Id.* at 2. It points to the deposition testimony of Steven Dandrea, who "testified that by 2023—when Safeway's outstanding balance had already grown into the millions—Dandrea continued supplying product, engaged in discussions regarding a potential merger, moved into Safeway's facility, and made a deliberate decision not to invoke PACA remedies." *Id.* (citations omitted). FCE also points to Plaintiff's response to Interrogatory No. 21, which states "that it did not identify any alleged PACA violations *until June 2024*—when it retained counsel—despite also admitting Safeway's failure to pay invoices dating back to the inception of the parties' relationship in *April 2023*." *Id.* (emphasis in original). It claims that this admission is significant, arguing that if Plaintiff "believed it was operating under a PACA trust structure, it would have recognized and acted upon those violations when they first occurred, not more than a year later and only after engaging counsel." *Id.* It also claims that Safeway's interrogatory responses confirm "the parties' course of dealing departed from PACA-compliant payment practices from the outset." *Id.* at 3. FCE argues, however, that the "full scope of that arrangement" cannot be ascertained without the requested discovery. *Id.* As such, it seeks discovery into Plaintiff's "payment allocation practices, accounting records, and related communications to establish that the parties' course of dealing constituted a *de facto* revolving line of credit" exceeding PACA-compliant timeframes. *Id.*

---

a decision on the issue and directed further briefing. *See* Order ¶ 3.d, June 18, 2026, ECF No. 137. Although the application is framed as a request to deny "Plaintiff's attempt to foreclose discovery," the Court construes it in the inverse as a request to compel. Appl. at 5. The Court also notes that all parties agree that the resolution of the issues underlying the instant application will also define the scope of discovery in the case going forward. *See* Pl.'s Resp. at 5.

In addition, FCE alleges that the conversion of short-term trust claims into long-term credit arrangements estops Plaintiff from invoking its PACA trust protections. *See id.* at 4. It again points to Mr. Dandrea's deposition testimony, this time regarding three 2024 promissory notes between Plaintiff and Safeway.[2] He testified that the promissory notes "superseded the PACA debt" and "took the PACA debt out of play." *Id.* (citations omitted). FCE argues absent further discovery, it is difficult to reconcile this testimony with Plaintiff's response to Interrogatory No. 21. *See id.* n.1 (noting that Plaintiff "obtained [the] promissory notes in February and May 2024," but claims that "it did not learn of PACA violations until June 2024"). It further argues that it is entitled to probe whether Plaintiff's prior conduct for its own strategic business purposes estops it from invoking its PACA trust protections. *See id.*

FCE also alleges that Plaintiff has already realized the economic benefit of the debt it now seeks to enforce. *See id.* Mr. Dandrea testified that Plaintiff's "Safeway-related produce debt was 'written off' for tax purposes; that the write-off resulted in substantial tax benefits eliminating millions of dollars in tax liability; and that the write-off corresponded to the approximately $10 million in alleged debt owed by Safeway." *Id.* FCE contends that this demonstrates that Plaintiff "obtained the economic benefit of treating the debt as uncollectible." *Id.* Therefore, it argues that without the requested discovery, Defendants will be deprived the ability to probe whether Plaintiff has already realized the economic benefit of the debt it now seeks to enforce. *See id.*

[2] These three promissory notes have been the subject of prior applications and their authenticity remains in disputes. *See, e.g.*, Def. F & S Produce Co., Inc.'s Br. Ex. C, ECF No. 115-1, at 18–23. The first note is dated February 9, 2024, and the latter two May 21, 2024. *See id.* All notes include the signature of Safeway's CEO and President, Frank Tedesco, bearing the same dates as the notes. They also include the signature of Plaintiff's then-Vice President, Steven Dandrea, bearing dates of February 22, 2024, May 24, 2024, and May 24, 2024, respectively. *See id.* Each note provides for the payment of more than $3 million, without interest, by at least December 31, 2024. *See id.* Collectively, the three notes amount to nearly the $10 million claimed by Plaintiff in this case.

FCE asserts the requested discovery is narrowly tailored to establish: Plaintiff's course of dealing offering long-term credit is inconsistent with PACA's prompt-payment framework; that it deliberately elected not to enforce its PACA rights; and that it realized other economic benefits by writing off the Safeway debt. *See id.* at 4–5. Specifically, FCE seeks the following:

- Communications regarding payment terms, PACA, promissory notes, including communications with Dandrea's accountants and lenders;
- Documents sufficient to show how payments were applied to invoices, including without limitation, accounts receivable aging reports, payment allocation logs, and other records reflecting application of payments;
- Banking records and communications relating to Dandrea's financing, promissory notes, and any representations regarding the Safeway debt;
- All versions of the promissory notes, transmittal emails, internal memoranda, and related communications reflecting the purpose of the notes and their intended effect on the PACA debt;
- The portions of Dandrea's tax returns (including Schedules 1065 and/or 1120-S), workpapers, and accounting records reflecting treatment of the Safeway debt, including any "bad debt" schedules, write-offs, reserves, or supporting documentation provided to Dandrea's accountant;
- Communications with accountants regarding the write-off of the Safeway debt, the timing of that write-off, and the tax benefits realized as a result.

*Id.* at 5. It argues these materials "are plainly relevant" and that Plaintiff's "disagreement with the legal significance of its conduct does not provide a basis to foreclose discovery into facts directly relevant to FCE's defenses." *Id.* For these reasons, FCE asserts that its application must be granted.

Plaintiff opposes FCE's application, in part. *See* Pl.'s Resp. It asserts that it is owed nearly $10 million for perishable agricultural commodities it sold to Safeway. It further asserts that the money owed qualifies as a "trust" debt pursuant to PACA. *See id.* at 1. Plaintiff alleges its invoices, which have payment terms of "PACA TERMS," *i.e.*, within ten (10) days, are controlling. *See id.* (citing 7 C.F.R. § 46.2(aa)(5)). It further alleges that only pre-sale, written agreements to extend

payment terms beyond those stated in a PACA invoice can result in a forfeiture of the trust status. *See id.* at 2–3 (citations omitted). Thus, Plaintiff contends that FCE's arguments concerning post-sale promissory notes, write-offs, or nonwritten agreements to extend credit or alter payment terms are immaterial. It also contends that the case law relied upon by FCE is contrary to Third Circuit precedent. *See id.* at 3–4. With respect to FCE's request for tax returns, Plaintiff argues that it fails to demonstrate sufficient grounds to warrant disclosure. *See id.* at 4. It does not object, however, to FCE's request for promissory notes or any documents concerning them. *See id.* at 4–5 (claiming they are irrelevant to its trust status because they concern post-sale payment terms, but otherwise relevant for evaluating the credibility of Mr. Dandrea and others). Accordingly, Plaintiff requests that FCE's application to compel, and the scope of discovery in the case going forward, be limited to the following documents dated from, or apparently created on, January 1, 2023, to the present:

> a. written agreements (including promissory notes) between Dandrea and Safeway that concern the payment terms for Dandrea's future sales of produce to Safeway; and
>
> b. documents (including memos, letters, emails, and texts) suggesting that Dandrea and Safeway had a written agreement that concerned the payment terms for Dandrea's future sales of produce to Safeway.

*Id.* at 5. Plaintiff maintains that FCE is not entitled to the financial statements, bank statements, or tax returns of itself, its related companies, or Frank and Steven Dandrea. *See id.*

## II. DISCUSSION

### A. Legal Standard

#### 1. Scope of Discovery

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides in part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Rule 26 is liberally construed to favor disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *See Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981). "The parties must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

The party seeking discovery bears "the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citation omitted). Whether information is relevant "depends on the facts of each case, and the determination of relevance is within the discretion of the Court." *Carchietta v. Russo*, No. 11-7587, 2014 WL 1789459, at *3 (D.N.J. May 6, 2014); *see Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) ("As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted."); *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999) (citation omitted) (recognizing that federal courts possess broad discretion in controlling discovery). The party resisting discovery bears "the burden of clarifying, explaining and supporting its objections." *Nestle Foods Corp.*, 135 F.R.D. at 104 (citation omitted).

**2. PACA Trust Eligibility**

In 1930, PACA was enacted "to promote fair trading practices in the produce industry." *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 199 (3d Cir. 1998) (citations omitted). In particular, Congress intended PACA to protect small farmers and growers who were vulnerable to the practices of financially irresponsible buyers. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted). Under PACA, it is unlawful for a buyer of produce to, *inter alia*, fail to make prompt payment for a shipment of produce. *See*

7 U.S.C. § 499b(4). "A buyer's failure to tender prompt payment triggers civil liability and the possible revocation of the buyer's PACA license." *Idahoan Fresh*, 157 F.3d at 199 (citations omitted). Prompt payment is defined by regulations which apply unless the parties agree otherwise in writing prior to the transaction. *See id.* (citing 7 C.F.R. § 46.2(aa) (defining prompt payment as within 10 days after receipt or acceptance of goods, in most cases)).

In 1984, PACA was amended to include a statutory trust provision as an additional remedy for sellers against a buyer failing to make prompt payment. *See id.* (citations omitted). "This trust is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee." *Tanimura*, 222 F.3d at 136 (citing 7 U.S.C. § 499e(c)(3)). A seller eligible for PACA trust benefits must preserve its rights by providing the buyer with written notice of its intent to preserve the trust within a certain timeframe or by including certain statutory language in its ordinary and usual billing or invoice statements. *See* 7 U.S.C. § 499e(c)(3), (4). While parties may agree to a payment period other than that defined in the regulations, "an unpaid seller loses its right to participate in the trust if it agrees in writing to extend the payment period beyond 30 days." *Idahoan Fresh*, 157 F.3d at 200 (citing 7 C.F.R. § 46.46(e)(2)). In the event of a default, however, an unpaid seller does not "forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. § 46.46(e)(3); *see Spada Props., Inc. v. Unified Grocers, Inc.*, 121 F. Supp. 3d 1070, 1084–85 (D. Or. 2015) (noting that the statute was amended in 2011 to clarify that a forfeiture of PACA trust rights only occurs in the event of a pre-default agreement to accept payment beyond 30 days).

**B. Analysis**

Here, there is no dispute that Plaintiff satisfied PACA's notice requirement by including the requisite language on its invoices to Safeway. The only issue is whether it had, by implication

or otherwise, a pre-default agreement for a payment period exceeding 30 days. FCE alleges that the parties' course of dealing reflects an implicit, pre-default agreement to extend payment terms beyond those permitted by PACA. If so, it argues that Plaintiff waived its PACA trust protections. Likewise, FCE alleges that the 2024 promissory notes amounted to Plaintiff converting short-term trust claims into long-term credit arrangements, taking PACA trust protections "out of play." Appl. at 4 (citation omitted). It also alleges that Plaintiff now seeks to recover the very debt that it already wrote off, resulting in substantial tax benefits and eliminating millions of dollars in tax liability in the process. *See id.* FCE concludes that Plaintiff should be estopped from invoking its PACA trust protections.

The Court must note that neither party cited to any case law or other authority in relation to FCE's estoppel arguments. Based on the Court's own review, it appears that any such authority addressing this issue directly in the context of PACA is scarce.[3] Nevertheless, the Third Circuit has recognized that "[g]eneral trust principles govern PACA trusts unless the principle conflicts with PACA." *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 167 (3d Cir. 2010) (citation omitted). As for waiver, the Court also notes that the Third Circuit has yet to address FCE's "course of dealing" theory.[4] The Third Circuit held in *Idahoan Fresh* "that an unpaid seller

[3] The Court's review revealed a single decision by the Third Circuit which casually references the defense in the context of PACA trust rights. *See In re Magic Restaurants, Inc.*, 205 F.3d 108 (3d Cir. 2000). There, the sole question was whether a restaurant was as a "dealer" under PACA and thereby subjected to its trust provision. *See id.* at 109. The Third Circuit held that a restaurant "which purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a "dealer" under 7 U.S.C. § 499a(b)(6)." *Id.* at 117. However, Given the USDA's "long history of non-enforcement against restaurants" for violations in this context, the Third Circuit opined that it "may be sufficiently extraordinary as to permit restaurants to successfully argue the application of equitable estoppel or laches." *Id.*

[4] Plaintiff posits that the Third Circuit "rejected the 'course of dealing analysis'" when it cited with approval in *Idahoan Fresh* to a district court decision holding evidence of a course of dealing between the parties accepting payment beyond 30 days does not forfeit an unpaid seller's right to

loses its right to PACA trust benefits if (1) it does not timely notify the buyer of its intent to preserve that right or (2) it agrees to a payment period beyond 30 days." 157 F.3d at 204. It also held that an unpaid seller was still eligible for PACA trust benefits notwithstanding an oral agreement to extend the payment period. *See id.* at 205. Notably, *Idahoan Fresh* predated the 2011 amendments clarifying the distinction between pre- and post-default agreements and specifically noted that it was "not reaching the issue of what would happen if the oral extension provided for a payment period in excess of 30 days because that situation is not before us in this case." *See id.* at 205 n.8. Thus, it remains unclear whether a pre-default agreement, oral or otherwise, to extend payment terms beyond the 30-day maximum could waive an unpaid seller's trust rights.

Since each shipment of goods stands alone as a separate transaction for purposes of PACA, an agreement to extend payment terms could be considered pre- or post-default in connection with separate transactions.[5] In other words, such an agreement could disqualify some, but not all, of the debt Plaintiff asserts qualifies as trust debt—the sum total of which equals nearly $10 million. Based on the facts before it, the Court finds that FCE has sustained its burden of showing that the requested discovery is relevant and may lead to admissible evidence. Whether or not it prevails in its defense remains to be seen. To be clear, the Court is not ruling on the merits of the defenses.

---

PACA trust benefits. Pl.'s Resp. at 4; *see Idahoan Fresh*, 157 F.3d at 207 (citing *Cont'l Fruit Co. v. Thomas J. Gatziolis & Co.,* 774 F. Supp. 449, 452 (N.D. Ill. 1991)). Irrespective of whether this proposition is true, it is by no means a holding of, or even an issue in dispute in, *Idahoan Fresh*.

[5] The Court notes the only authority submitted by the parties that expressly states this much is the out-of-district decision heavily relied on by FCE. *Spada Props., Inc. v. Unified Grocers, Inc.*, 121 F. Supp. 3d 1070 (D. Or. 2015). The *Spada* court found that the "text of PACA demonstrates that each shipment of goods made by a PACA beneficiary logically exists as a separate unit or transaction for purposes of PACA protection." *Id.* (citing 7 C.F.R. § 46.46(e)(2)). The Court agrees and finds this proposition entirely consistent with the regulations and Plaintiff's own arguments. If each shipment did not stand alone as a separate transaction for purposes of PACA, it would render any distinction between pre- and post-sale or pre- and post-default payment agreements meaningless. *See* Pl.'s Resp. at 2–3; *see also* 7 C.F.R. § 46.46(e)(3).

The Court merely finds FCE has shown that it should be allowed to probe this subject matter further so it has a fair opportunity in presenting the defenses at trial. Given the significant amount in controversy—$10 million—the Court also finds that the requested discovery is proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1).

While tax returns do not enjoy an absolute privilege from discovery, "public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Tele-Radio Sys. Ltd.*, 92 F.R.D. at 375 (citation omitted). Unless they are "clearly required in the interests of justice, litigants ought not to be required to submit such returns as the price for bringing or defending a lawsuit." *Id.* (citation omitted). Here, the Court finds that FCE has shown the information is not otherwise available and that disclosure is required in the interests of justice. Contrary to Plaintiff's contentions, FCE does not seek any related companies' or individual's tax returns. Rather, it only seeks Plaintiff's returns specifically the portions thereof relating to "bad debt," to establish how it treated the Safeway debt. Appl. at 5. As such, the Court finds the tax returns are relevant and proportional. To the extent that the damages claimed by Plaintiff may be affected by the tax benefits associated with its alleged write-off and tax treatment of the Safeway debt, the Court further finds that its tax returns are also relevant and proportional in this regard. Since FCE does not submit a proposed timeframe for the requested discovery, the Court will adopt Plaintiff's proposal and limit the discovery to documents dated from, or apparently created on, January 1, 2023, to the present.

## III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **19th** day of **August**, **2026**, that Defendant's application [ECF No. 139] is **GRANTED**; and it is further

**ORDERED** that the scope of discovery in this case shall extend to the requested materials dated from, or apparently created on, January 1, 2023, to the present.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Renée Marie Bumb, Chief Judge